I'd like to reserve five minutes for rebuttal. Counsel, please be reminded that the time shown is your total time remaining. Yes, Your Honor. All right. Your Honors have before you a legal issue, but you also have before you a human being, a person who had no criminal record, a widower with four children, someone who turned himself in when he could have stayed in Mexico, somebody who admitted to what he had done. And the most important element of this, when considering all the briefing papers, is what actually happened in this offense. What was his role in the case of which he was convicted? When we look at the case law, we see that in determining whether a person is an organizer, a leader, a manager, or a supervisor, you have to look at that specific offense. And opposing counsel and the government has presented a kaleidoscope of facts that are completely unrelated to this offense and are using those facts to try to establish that he was an organizer. Well, when you look at the facts of this particular offense, when the government approached my client and asked if he would be able to sell and provide to them certain illegal substances and he complied with that, he was not acting as an organizer, a manager, et cetera. Counsel, what is our standard of review? The standard review, there are two different standards, Your Honor. In terms of applying the legal standard to the fact it's abuse of discretion. What is our standard of review in looking at the district court's determination of whether your client was an organizer? What's our standard of review on that? Well, factual findings, the standard is clear error. So for that finding, we would have to conclude that there was clear error, correct? Yes, Your Honor. Okay. And in the Wilson case, which is cited or excuse me, the Whitney case, United States versus Whitney, cited in the briefs, 673 Federal 3rd, 965. On page 976, it makes very clear that this has to relate to, the facts have to relate to this particular crime. And there are not facts in this particular crime that show that he was an organizer or manager. Let's put aside what you said, the kaleidoscope of other evidence. But in this particular crime, when your client was making the delivery of 50 pounds of methamphetamine, which is a lot of drugs, he went to somebody else's house who was storing the drugs, directed that person then to deliver the drugs to the undercover agent. So isn't that alone enough to show that he was at least supervising, managing, directing that second person who made the delivery? Your Honor, he was trying to facilitate a drug deal, and he was having the other person ask him to hurry up. That is what he said. In terms of the other person coming out and providing those drugs, there's not evidence that he was directing him and the person controlling him in terms of doing that. There are many instances when people are interacting with other people as equals, not as managers and supervisors, where they will trigger a response of action by somebody else. And an example might be in the Whitney case, where the defendant in that case gave documents to another individual that needed to be filled out. And in him extending his hand and therefore soliciting the other person in putting out his hand to take the documents, that could be arguably causing a reaction in somebody else. Counsel, you're asking us to say that the district court clearly erred in interpreting those actions. And so how can we say that the district court, if there are several ways that the actions can be interpreted, how can we say the one that the district court selected was clearly erroneous? Two reasons, Your Honor. One is that this is analogous to the Whitney case, where there was an action that triggered a response in another individual. And that was found to be not sufficient. Another reason, though, that's a very important reason, is when we look at the law itself, Section 841A1, which is the crime of which my client was convicted, it says to manufacture, distribute, or dispense or possess with intent to manufacture, distribute, or dispense a controlled substance. And so according to the government's theory of the case and the government's argument and even the finding of the district court, almost no one could be convicted of that crime without also having the aggravating role of being an organizer or supervisor, unless they themselves have the manufacturing facility and they themselves are doing every single role in the drug manufacture and sale and distribution process, which, as we know from common sense, is not what happens in the real world. So to use the district court's decision in this case to say that he was an organizer and to adopt the government's position on this would be essentially to say that 841A1 almost always must involve someone who's organizing and managing someone else because someone needs to interact with another person to get the drugs, the person who manufactures them, the person who would transport them across the borders, et cetera. And obviously those interactions involve some type of communication that need not be supervisor communication. But doesn't a statement like hurry up constitute something more than just an interaction? Isn't that more like a direction? Hurry up, I think, is most consistent with the statement of someone who might be a little rude, but not necessarily somebody who's a supervisor, someone who's directing somebody else as to what to do. Again, it's in the case of Whitney, there was an agreement among multiple people who were equals to carry out an act, and there are many instances where one act would trigger a responsive act from somebody else. And so in this case where my client had a role, this other individual had a role, and he wanted to trigger a responsive act, that's not the same as supervising or managing. That's not evidence of supervising or managing. That's essentially analogous to the Whitney case. So in that case, I'm sure Your Honor can imagine many circumstances where you might interact with equals, with peers, friends, other individuals, and perhaps request that they hurry up without actually being their manager or supervisor. That's a common manner of interaction between equals, and one might even say that to a subordinate even. So that would not establish that. In terms of the Whitney case, there's also reference to how a pre-sentence report in that case is used to, in a conclusory fashion, say that a person is a manager, is an organizer. And that is also very analogous to this case where there's statements that there have been ongoing investigations, there are many statements in the passive voice, there's many other information that's not actually factually to this case. And some of the most important cases that are cited by opposing counsel, when you look at what is being discussed in those cases, People v. Doe, 778 Federal 3rd 814, when you look at the Verve case that was cited in a supplemental briefing, when you look at the Beltron case on page 13 of opposing counsel's filing, and the Salcido-Corrales case, it's all instances where someone is clearly directing somebody else in a supervisor fashion on the nothing directly related to the case. In the case of Doe, there was the organization of at least three other individuals telling them what to do. There was a discussion and a negotiation about the division of profits. There was introducing essential parties that played a meaningful role. In the case of Beltron, there was telling two people specifically where to go to return to a residence, what to do when they were there to pick up specific drugs. In the Salcido-Corrales case, there was directing another person to deliver the drugs, not saying please do what you were already planning on doing in a faster fashion, because I'm impatient, I'm perhaps rude, but this is what you're supposed to do. So that is actually laid out in those cases. And in the Vinge case as well, there is a statement about what he was doing in that specific case. He would reach out to his source, the mainland, pool money from friends on the island, place the order, set the price, distribute the drugs once they arrived. Those are all related to supervisory and management activities on that particular case, not just a bunch of prior things that are found and have no connection to the actual case, like putting a package in a mailbox on video without any connection to this case. Counselor, did you want to save some time for rebuttal? Yes, Your Honor. All right. Thank you. Thank you. May it please the Court, Daniel Zip on behalf of the United States. Your Honor, the District Court was well within its discretion in this case in applying a two-level enhancement under 3B1.1. In United States v. Doe, this Court made clear that there are two independent ways that a defendant can qualify for the enhancement. He can either act as a supervisor and directly control the activities of others, or he can act as an organizer. And as long as he has the ability and influence necessary to coordinate the activities of others involved in the offense, he can still qualify for the enhancement even without any direct control over the other participants. The defendant in this case qualifies under either prong. Most clearly under the second, under the organizer prong. In Doe, this Court held that merely coordinating drug transactions is sufficient to qualify for the enhancement, and this defendant was clearly coordinating drug transactions. In the first meeting with the undercover officer, the defendant told him that he had a reliable network for bringing drugs across the border and that he was distributing drugs as far as New York and Florida. In his post-arrest statement, he admitted that he was a coordinator and that when he received an order for 50 pounds of methamphetamine, he went around to different sources, collected the drugs, brought them across the border, and sold them to the undercover officer. Under this Court's clear case law in Doe and Valero, those type of facts make this defendant an organizer, and it certainly wasn't illogical or implausible for the District Court to apply the enhancement here. And because the Court made that finding, it also necessarily precluded safety valve under 5C1.2. You make the argument of harm was error. Can you tell me, would we not have to allow the District Court to make that determination as to whether they would have varied even further downward if the District Court were to acknowledge, if we were to say the District Court is wrong in the enhancement and the safety valve? We don't believe so, Your Honor. There is certainly a lot of case law that says that, that errors in the guidelines necessarily require remand. In Munoz-Camarena, however, there's a footnote that lists a list of examples of when an error could be harmless. One of those examples is when the correct guidelines and incorrect guidelines overlap. The case says overlap substantially. In this case, they sort of touch at the margins, at 210 at the top and 210 at the bottom width. But Munoz-Camarena makes clear in that footnote that these are just illustrative examples of what can be harmless. In this case, when the District Court makes the calculations, has full awareness of what the dispute is, and then lops off 100 months off of the sentence, well below the guideline range that would apply to either one of those, we believe that that's a situation where this Court can look at the Court's overall 3553 analysis, which included all of the facts that underlie the dispute over the role enhancement in the first place, and determine that when the Court said 151 months is the fair and just sentence, that that would be the case regardless of how it ultimately came out on the role enhancement. But obviously, I think the case law is very clear in this case that this Court doesn't even have to The Court has any other questions? It appears not. Thank you, Counsel. Thank you. Rebuttal. Your Honor, the facts in this case are wholly consistent with someone acting as a runner, acting as one part. Runner? One part. Excuse me. Yeah, a runner, essentially a person who's providing drugs, and not an organizer, someone who is a field worker. It's consistent with that, and any other finding would essentially say that 841A1 must always include someone who is an organizer and a manager. The opposing counsel mentioned the issue of harmless error, which Your Honor brought up. There was a statutory minimum in this case that was affecting the judge's determination. The minimum with safety valve would have been zero, which would have very drastically changed the universe in which the District Court was operating. This is a case where we have a man with no criminal record, and I ask Your Honors to analyze the law and have compassion to do justice in this case. Thank you. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the Court.
judges: RAWLINSON, Melloy, THOMAS